UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
ENERGIZER, LLC,

                      Plaintiff,                      **MEMORANDUM & ORDER**
                                                                     20-CV-1583 (MKB)

            v.

MTA TRADING, INC., and BEST DEAL
SUPPLY, INC.,

                      Defendants.
-----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

       Plaintiff Energizer, LLC commenced the above-captioned action on March 27, 2020, against Defendants MTA Trading, Inc. ("MTA") and Best Deal Supply, Inc. ("Best Deal"), alleging that (1) MTA breached its contract with Plaintiff and (2) Best Deal committed tortious interference with the contractual and business relationship between MTA and Plaintiff. (Compl., Docket Entry No. 1.) On August 28, 2020, Plaintiff amended the Complaint, adding a claim for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (Am. Compl., Docket Entry No. 16.) Plaintiff alleges that (1) MTA purchased batteries from Plaintiff and sold them to reseller Best Deal in violation of MTA's purchase agreement with Plaintiff, which only allowed sales to consumers, and that Best Deal sold batteries to consumers while advertising the batteries using Plaintiff's mark, (*id.* ¶¶ 40–73); and (2) Defendants damaged the goodwill associated with Plaintiff's mark and diluted Plaintiff's trade name by fulfilling orders with products different from those advertised and shipping batteries to consumers that were "used, aged, or tampered-with," (*id.* ¶¶ 69–70, 75–77).

Defendants move to dismiss the Amended Complaint, arguing that (1) Plaintiff fails to state a false advertising claim under the Lanham Act because it relies on isolated bad reviews taken out of context, and (2) if the Court dismisses Plaintiff's federal claim, the Court then lacks jurisdiction over the remaining state-law claims.  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 27; Defs.' Mem. in Support of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 27-3; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 29.)  For the reasons set forth below, the Court denies the motion.

**I.   Background**

The Court assumes the truth of the factual allegations in the Amended Complaint for purposes of this Memorandum and Order.

Plaintiff is a Delaware limited liability corporation with headquarters in Missouri, and Energizer Investment Company is "a Delaware corporation" and the sole member of Plaintiff.  (Am. Compl. ¶ 23.)  Plaintiff "markets and sells a variety of products, including[,] but not limited to, household and specialty batteries, headlamps, and portable lights, for residential and consumer applications" (the "Energizer Products").  (*Id.*)  MTA is a New York corporation with its principal place of business in New York.  (*Id.* ¶ 24.)  It sells products to resellers and consumers through various websites.  (*Id.*)  Best Deal is a New York corporation with its principal place of business in New York.  (*Id.* ¶ 25.)  It purchases products from sellers such as MTA, then resells them to consumers on websites such as Amazon.com, where it uses the account "BD Supply."  (*Id.*)

Plaintiff holds registered trademarks for marks including "Energizer" and "advertises, distributes, and sells its products to consumers" under those marks.[1] (*Id.* ¶¶ 26, 29.) Plaintiff's terms and conditions of sale, which apply to every sale of Plaintiff's products, prohibit resale (the "Terms and Conditions"). (*Id.* ¶¶ 37–38.) The Terms and Conditions prohibit buyers from selling to anyone other than "the ultimate consumer for whom the [goods are] designed and who does not intend to resell the [goods] to a third party" unless authorized in writing. (*Id.* ¶ 38 (quoting Terms and Conditions § 13.B).) They also prohibit buyers from using the Energizer mark to "sell or offer for sale any product bearing a trademark, copyright, patent, or name associated with [Plaintiff], which [the buyer] purchased or obtained from a source other than directly from [Plaintiff]." (*Id.*) In addition, the Terms and Conditions prohibit buyers from advertising Energizer Products for sale on any website unless the parties agree to a separate internet sales addendum. (*Id.* (quoting Terms and Conditions § 13.A).) Since August 30, 2019, all of Plaintiff's invoices have contained a warning that:

> Unless otherwise agreed to in writing by [Plaintiff], this invoice and the sale of goods hereunder is subject to the terms and conditions located at http://www.energizerholdings.com/en/company/ supplierrelations/customers-tac/Pages/default.aspx . . . and acceptance of the goods is expressly limited to such [t]erms. If you do not agree with these Terms [and Conditions], you must reject the

---

[1] Plaintiff includes a copy of its trademark registration with the Amended Complaint. (Trademark Electronic Search System Result, annexed to Am. Compl. as Ex. 1, Docket Entry No. 16-1.) The Court considers Plaintiff's trademark registration because it is attached to the Amended Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

3

>    goods. Acceptance of the goods shall be deemed acceptance of the Terms [and Conditions].

(*Id.* ¶ 39.)

Until January of 2020, Plaintiff sold Energizer Products to MTA and consented to MTA's use of the Energizer mark to sell Energizer Products directly to consumers in accordance with the Terms and Conditions.[2] (*Id.* ¶¶ 33, 40–41.) However, at times after August 30, 2019, MTA repeatedly sold Energizer Products to Best Deal, which then resold them to consumers. (*Id.* ¶¶ 43, 46.) Plaintiff contends that by selling to a reseller instead of selling directly to consumers, MTA violated the Terms and Conditions. (*Id.* ¶ 46.) Plaintiff further contends that MTA also violated the Terms and Conditions by purchasing Energizer Products from Montblanc International Corporation after August 30, 2019, rather than buying directly from Plaintiff. (*Id.* ¶¶ 49–50.)

Plaintiff alleges that MTA sold Energizer Products to Best Deal as part of a deliberate scheme to evade the Terms and Conditions and that Best Deal knew the sale violated the Terms. (*Id.* ¶ 54.) In furtherance of the scheme, Defendants listed the Energizer Products for resale to consumers on Amazon.com under the account "BD Supply." (*Id.* ¶ 55.) In addition, MTA sold to Best Deal Energizer Products that were not purchased from Plaintiff, intending that Best Deal would resell the Energizer Products online. (*Id.* ¶ 59.) Plaintiff through counsel repeatedly contacted the BD Supply account demanding that it remove its listings of Energizer Products and informed the account's owner "that, by inducing MTA to breach its [a]greements with [Plaintiff], [Best Deal] was engaging in tortious interference with contract." (*Id.* ¶¶ 57–58.) As of the date of the filing of the Amended Complaint, the BD Supply account still listed "hundreds of batteries bearing [Plaintiff's] [m]ark." (*Id.* ¶ 62.)

---

[2] Plaintiff has never allowed Best Deal to use its marks. (Am. Compl. ¶ 34.)

Plaintiff alleges that Defendants have been falsely advertising that the batteries they list for sale online using Plaintiff's mark are new, which results in fewer sales of new batteries bearing Plaintiff's mark. (*Id.* ¶¶ 67–69.) Plaintiff also alleges that Defendants are advertising for sale specific products bearing Plaintiff's mark and then fulfilling the order with different products, confusing consumers (as reflected in product reviews), and harming Plaintiff and consumers. (*Id.* ¶¶ 70–73.) In seven consumer reviews quoted in the Amended Complaint, the reviewers report that batteries sold by the BD Supply account did not work or were not as advertised. (*Id.* ¶¶ 68, 72.) The reviewers wrote that (1) "[three] of the batteries did not work," (2) the "[b]atteries were dead," (3) "[t]hese batteries are [barely] registering as 'good' on a basic meter" and "[e]ven off brand batteries come with a higher charge level," (4) "[t]his is just another pack of [two] year old batteries. I would not buy from this supplier again," (5) "[t]his is listed as a [six] pack . . . I was sent ONE battery, not six so FIVE batteries are missing," (6) "we were short [nine] batteries in our order," and (7) "[w]e ordered [two] four count batter[y] packs as we had ordered previously, but we received [eight] individual batteries in their own package." (*Id.* ¶¶ 68, 72.) In addition, Plaintiff alleges that consumers who purchased a pack of ten AA batteries from BD Supply received a pack of eight and a separately packaged pack of two. (*Id.* ¶¶ 70–71.)

Plaintiff alleges that Defendants' acts dilute Plaintiff's brand and goodwill and interfere with Plaintiff's ability to control the quality and reputation of its product. (*Id.* ¶¶ 75–78.) Plaintiff seeks contractually provided-for liquidated damages equaling "the greater of (1) the costs and fees associated with [Plaintiff's] investigation and enforcement, or (2) five times the

5

[manufacturer's suggested retail price] of the goods per unit of goods,"[3] (*id.* ¶¶ 51–52, 98), money damages in an amount to be determined for tortious interference, (*id.* ¶ 106), treble damages, Defendants' profits from the infringing sales, and reasonable attorneys' fees for their violation of the Lanham Act, (*id.* ¶ 115), and injunctive relief pursuant to 15 U.S.C. § 1116 for Defendants' violation of the Lanham Act, (*id.*).

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

---

[3] Plaintiff contends that the contractual damages for two specific types of batteries sold to MTA in December of 2019 equal $96,570, exceeding the $75,000 diversity jurisdiction threshold. (*Id.* ¶ 53.)

### b. Plaintiff has stated a Lanham Act false advertising claim

Defendants argue that Plaintiff fails to state a false advertising claim because (1) the Amended Complaint relies on "seven pieces of negative feedback from Amazon customers" without explaining whether they were representative and (2) Plaintiff does not allege details about how the batteries were advertised that would render Defendants' advertising false.[4] (Defs.' Mem. 1–5; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply") 6, Docket Entry No. 30.)[5] In support, Defendants ask the Court to take judicial notice of their good customer ratings on Amazon.com, which they conclude undercut Plaintiff's claim. (Defs.' Mem. 2–3.) In addition, Defendants argue that Best Deal's records confirm that some of the reviews quoted in the Amended Complaint are for other battery brands, not Plaintiff's products.[6] Defendants

---

[4] Defendants' motion is accompanied by the declaration of Herman Wagschal, an officer of Best Deal. (*See* Decl. of Herman Wagschal ("Wagschal Decl."), annexed to Defs.' Mot. as Ex. 1, Docket Entry No. 27-1.) The declaration includes the same legal arguments and factual challenges set forth in Defendants' memorandum of law. (*Compare id.* with Defs.' Mem.) Plaintiff asks that "the Wagschal Declaration . . . not only be disregarded, but stricken." (Pl.'s Opp'n 5 n.2.) The Court declines to rely on this declaration in deciding the motion to dismiss and denies as moot Plaintiff's request to strike the declaration. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (second alteration in original) (first quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991); and then citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988))).

[5] Because Defendants' motion and reply are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

[6] Defendants submit additional facts in support of their motion, including their claims about the contents of Best Deal's currently-undisclosed business records and consumers' reviews of the seller BD Supply on Amazon.com, but the Court declines to consider the additional information or to convert the motion to a summary judgment motion. (*See* Defs.' Mem. 3 n.1. (stating that Best Deal "refers to the contents of its own records merely to illustrate [Plaintiff's] failure to [state] a plausible claim," reserves the right to file copies of the records later, and "understands that the Court considering averments outside the [Amended Complaint] could result in the motion being treated as one for summary judgment")); *see also Steadfast Ins. Co. v.*

7

present alternative explanations for the negative reviews, including that Amazon shipped and fulfilled the products and is ultimately responsible for shipping the wrong product, and that "competitors often arrange for negative feedback." (*Id.* at 3–4.) Defendants assert that Plaintiff could have made its own purchases or used public Amazon reviews to determine whether there were a disproportionate number of issues with Defendants' sales of Energizer Products, but "does not disclose whether it did so, or what the results were" if it did. (*Id.* at 4.) Finally, Defendants claim that Plaintiff (1) "fails to allege how the batteries were advertised (other than as 'new')," (2) "does not allege whether the products were advertised with a disclaimer as to repackaging," and does not "allege what the advertised expiration date was, which is needed to have any plausible claim that such date was falsely advertised." (*Id.* at 4.)

In response, Plaintiff argues that (1) Defendants' arguments rely on facts outside the amended complaint that are not judicially noticeable and should not be considered on this motion to dismiss, and (2) the Amended Complaint pleads facts sufficient to give rise to a Lanham Act claim. (Pl.'s Opp'n 1, 4–6.) Plaintiff also argues that, at the pleading stage, it is not required to detail its evidence or to "allege a specific amount of malfeasance," and that "Defendants' contention that negative feedback is not 'proof' of false advertising" is not relevant. (*Id.* at 8.)

---

*T.F. Nugent Inc.*, No. 20-CV-3959, 2021 WL 149084, at *2 n.2 (S.D.N.Y. Jan. 15, 2021) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (alterations in original) (internal citation omitted) (quoting *Abbey v. 3F Therapeutics Inc.*, 06-CV-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009))); *Regan v. Village of Pelham*, 2021 WL 1063320, *8 n.6 (S.D.N.Y. 2021) (holding that "[the p]laintiff's reliance on [the defendant's policy], which appears nowhere in the [a]mended [c]omplaint and is only discussed in [the p]laintiff's affidavit, is improper because it is beyond the four corners of the complaint and cannot be considered in adjudication of a Rule 12(b)(6) motion to dismiss for failure to state a claim").

8

Section 1125(a) "principally provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising.'" *Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991); *see also Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)" (citation omitted)).[7] "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255–56 (2d Cir. 2014)). To show literal falsity, a plaintiff must establish "that the advertisement either makes an express statement that is false or a statement that is 'false by necessary implication,' meaning that the advertisement's 'words or images,

---

[7] Section 1125(a) states:
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Because Plaintiff's claim is based on section 1125(a)(1)(B) — a false advertising claim — the Court only discusses case law relevant to this provision.

9

considered in context, necessarily and unambiguously imply a false message.'" *Id.* (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)).  In the alternative, to show implied falsity, a plaintiff must show "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) (quoting *Time Warner*, 497 F.3d at 153).  "[F]or a false message to be material, the defendant must have at least 'misrepresented an inherent quality or characteristic of the product.'" *Church & Dwight Co.*, 843 F.3d at 70 (quoting *Merck Eprova*, 760 F.3d at 255).  While some cases state that a material misrepresentation must be one "likely to influence purchasing decisions," *Apotex*, 823 F.3d at 63 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc. ("NBA")*, 105 F.3d 841, 855 (2d Cir. 1997)), the Second Circuit has more recently stated that "the essential elements of the materiality standard . . . appear to be somewhat unsettled in [the] circuit," *Church & Dwight Co.*, 843 F.3d at 70, and that cases after *NBA* "focus on 'the inherent quality or characteristic' descriptor," not on the effect on consumers' purchasing decisions, *id.* at 70 n.10.

Plaintiff has adequately alleged that Defendants made literally false, material claims about the batteries that they shipped to consumers.  Plaintiff alleges that Defendants advertised their batteries as "new," (Am. Compl. ¶ 67), and also advertised the batteries in certain quantities, but instead, the batteries were not new and were inoperable or had insufficient charge, and the shipments sent to consumers were short of the quantities they ordered, (*id.* ¶¶ 68–72).  *See Merck Eprova*, 760 F.3d at 256 (holding that the defendant's use of the common name for the naturally occurring stereoisomer of folate "in its product specification sheets, brochures, certificates of analysis, and material safety data sheets for its Extrafolate product," a synthetic compound that did not carry the same nutritional benefits as natural folate, was objectively

10

false); *Groupe SEB United States, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 202 (3d Cir. 2014) (holding that the defendant's claims that its electric steam iron produced more steam power than a competitor's, as measured in grams per shot and grams per minute, were objectively false). Plaintiff's allegations describe material differences between what Best Deal advertised and what it sent to customers. Some customers received batteries that did not work or held less of a charge than new batteries, while others received a smaller quantity of batteries than they ordered. (Am. Compl. ¶¶ 68–72.) The functionality and the quantity of batteries are "inherent qualit[ies] or characteristic[s] of the product." *Merck Eprova*, 760 F.3d at 255 (holding that the defendant's publications were literally false when they described one isomer of a chemical compound, not the mixture with different properties that the defendant's product actually contained); *see also Coca-Cola Co. v. Tropicana Prods.*, 690 F.2d 312, 318 (2d Cir. 1982) (holding that "the claim that [the defendant's orange juice] contains only fresh-squeezed, unprocessed juice is clearly a misrepresentation as to that product's inherent quality or characteristic"); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 (1st Cir. 2002) (holding that a rational finder of fact could determine that "labeling that gave the false impression that the garments contained virgin cashmere" rather than recycled cashmere was material because of "the degree to which recycled fibers affect the quality and characteristics of a garment").[8]

Defendants' reliance on *Panther Partners* is misplaced. As Plaintiff argues, *Panther Partners* "is a securities fraud action that has nothing to do with the Lanham Act or false advertising." (Pl.'s Opp'n 8 (citing *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F.

---

[8] Defendants do not contest that Plaintiff has adequately alleged the remaining two elements of a Lanham Act false advertising claim — that the goods at issue were placed in interstate commerce and that Defendants' actions injured Plaintiff.

11

Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009)).)  In *Panther Partners*, an action brought pursuant to the Securities Act of 1933, the plaintiff alleged that the defendant did not disclose, among other faults, a latent default in a particular semiconductor chip, during its initial public offering and subsequent secondary offering.  *Panther Partners, Inc.*, 538 F. Supp. 2d at 662.  The court held that the plaintiff's pleading was defective because it had failed to allege that the defendant knew of the issues and "considered them to be material within the meaning of the securities regulations at the time of the offering." *Id.* at 669 ("The law is clear that what must be disclosed are material 'known trends' or 'uncertainties,' or the 'most significant' risk factors with respect to an offering, which are known to the offering company at the time the registration statements are made." (first quoting 17 C.F.R. § 229.303; and then quoting 17 C.F.R. § 229.503)).  In contrast, "knowledge and intentionality are not essential elements of a Lanham Act false advertising claim." *N. Am. Photon Infotech, Ltd. v. DiscoverOrg, LLC*, No. 20-CV-2180, 2020 WL 3051059, at *3 (S.D.N.Y. June 8, 2020); *see also Greenwich Taxi, Inc. v. Uber Techs., Inc.*, 123 F. Supp. 3d 327, 334 (D. Conn. 2015) ("[N]o fraudulent intent . . . is required under 15 U.S.C. § 1125." (quoting *John P. Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997))).

      Defendants' additional arguments — (1) that only a small fraction of new batteries are faulty, (2) that Amazon's shipping and handling could have introduced the faults complained of, and (3) that the reviews could be malicious acts by competitors — while arguably legitimate defenses to Plaintiff's claim, do not undermine the fact that Plaintiff's allegations are sufficient to state a claim.[9]  *See James v. Bradley*, 808 F. App'x 1, 2 (2d Cir. 2020) ("We do not consider

---

[9] Defendants also argue that, should the Lanham Act claim fail, the Court will lack jurisdiction over the breach of contract and tortious interference claims because the allegations in

matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013))); *Berkley Ins. Co. v. Bouchard*, No. 20-CV-9, 2020 WL 7646542, at *3 (D. Vt. Dec. 23, 2020) ("To the extent [d]efendants allege additional facts in their motion to dismiss and reply, those facts cannot be considered in determining the sufficiency of the [c]omplaint." (citing *Oxman v. Downs*, 999 F. Supp. 2d 404, 406 (E.D.N.Y. 2014))).

### III. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

Dated: June 16, 2021
   Brooklyn, New York

               SO ORDERED:

                 s/ MKB    
               MARGO K. BRODIE
               United States District Judge

---

the Amended Complaint do not support either the amount in controversy or the complete diversity requirements of diversity jurisdiction. (Defs.' Mem. 5–7.) Because Plaintiff has stated a federal claim under the Lanham Act, the Court has supplemental jurisdiction over Plaintiff's related state law claims, which arise from the same series of transactions. *See* 28 U.S.C. § 1367(a); *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (noting that federal courts may exercise supplemental jurisdiction when federal claims and state claims "stem from the same 'common nucleus of operative fact.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))).